FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 26, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GRANDPA BUD, LLC, a Washington limited liability company,<br><br>                    Plaintiff,<br><br>     v.<br><br>CHELAN COUNTY WASHINGTON, a municipal corporation; KEITH GOEHNER, individually and as a Chelan County Commissioner; and LISA GOEHNER, and her marital community,<br><br>                    Defendants. | NO:  2:19-CV-51-RMP<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment, ECF No. 64.  The Court has considered the record, the briefing, the relevant law, and is fully informed.

## BACKGROUND

This case involves local restrictions on the cultivation of cannabis in Chelan County, Washington.  In 2013, Plaintiff Raymond Schmitten, owner of Schmitten

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

1 Orchards, Inc., decided to diversify his farming operation by expanding into the
2 cannabis market. ECF No. 17 at 2–3. That year, Schmitten, along with some of
3 his family members, founded Grandpa Bud, LLC in order to cultivate and process
4 cannabis for distribution. *Id*. Grandpa Bud also did business as "Gaia Earth
5 Botanicals," "Grandpa Bud Botanicals," and "Zion Botanicals." ECF No. 67-1 at
6 12–13. Prior to Grandpa Bud's formation, Schmitten Orchards already operated
7 170 acres of pears, apples, cherries, and alfalfa. ECF No. 17 at 3.

8   In 2014, Grandpa Bud received a license from the Washington State Liquor
9 and Cannabis Board and began producing and selling its crop. *Id*. at 5. At that
10 time, Grandpa Bud was permitted to cultivate cannabis in Chelan County. *Id*. at 4;
11 ECF No. 65 at 4. Schmitten leased a portion of his orchard property, which had
12 previously grown cherry trees, to Grandpa Bud for the new crop. ECF No. 17 at 3.
13 The parties refer to this property as the "Turkey Shoot" property. *Id*. Although
14 there was a formal lease between Schmitten and Grandpa Bud for the Turkey
15 Shoot property, Schmitten states that he did not collect rent from Grandpa Bud,
16 and that he kept putting his money into the small, start-up business. ECF No. 67-1
17 at 16–17.

18   In September of 2015, the County issued a moratorium on siting new
19 cannabis businesses. ECF No. 17 at 5; ECF No. 65 at 5–6. On February 16, 2016,
20 the Board of County Commissioners voted to adopt Resolution 2016-14, which
21

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

retroactively banned cannabis production and processing in unincorporated areas of Chelan County, and provided a twenty-four-month amortization period for certain businesses. ECF No. 66-6 at 6. Pursuant to the amortization clause, businesses that had been lawfully established prior to September 29, 2015, had until March 1, 2018, to cease operations. *Id*. This included Grandpa Bud.

Despite Resolution 2016-14, Schmitten maintains that Grandpa Bud "moved ahead with [its] business" based on encouraging comments made to him by Chelan County Commissioner Goehner. *See* ECF No. 67-1 at 40. Additionally, when Resolution 2016-14 was passed, the Board of County Commissioners authorized a workgroup to "assist in the research, development, and possible enactment of an appropriate regulatory structure for the implementation of Initiative-502," which legalized the production, sale, and recreational use of cannabis in Washington State. ECF No. 66-26 at 3. Schmitten was a member of this workgroup, and he thought the workgroup was in place to determine new rules that would allow Grandpa Bud, along with other cannabis producers, to keep farming and processing cannabis in Chelan County. ECF No. 79 at 5. Accordingly, Schmitten asserts that he did not focus on winding down his business at that time. *Id*.

The workgroup "consisted of nine participants and two alternates representing the many different concerns and interests" related to cannabis production in Chelan County. ECF No. 66-26 at 3. The workgroup discussed and

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

voted on a number of issues related to the production and processing of cannabis, like, "Should all [cannabis] growers be regulated equally?" and "Would outdoor . . . production, without filtration, be permissible if located 25 feet from any residential land use?" *Id*. at 7–8.  The workgroup presented its opinions to the Chelan County Planning Commission, who, in turn, made recommendations to the Board of County Commissioners about how to regulate cannabis in Chelan County.

On August 22, 2017, the Board of County Commissioners passed Resolution 2017-75, which supplemented and amended Resolution 2016-14.  ECF No. 66-8.  Resolution 2017-75 regulates the placement and operations of entities cultivating and processing cannabis.  *See id*.  Resolution 2017-75 amended the county code to "establish zoning regulations that provide for state licensed and approved cannabis activities and land use consistent with state law . . . , adding additional local standards to address potential public health, safety, and welfare considerations." *Id*. at 6.  Resolution 2017-75 states in relevant part:

> Cannabis production and/or processing operations, as well as any associated structures, rendered legally nonconforming pursuant to Resolution 2016-14 and which cannot comply with the amendments adopted herein by the effective date must cease, abate, and terminate no later than March 1, 2018.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

*Id*. at 5.  Accordingly, the producers who could not meet the standards set forth in the amendments adopted by Resolution 2017-75 were required to cease operations no later than March 1, 2018, consistent with the Resolution 2016-14.

Grandpa Bud asserts that it could not comply with the amendments adopted by Resolution 2017-75 due to its location on the Turkey Shoot property.  Thus, after Resolution 2017-75 passed, Grandpa Bud decided not to grow a new crop in 2017.  *See* ECF No. 67-1 at 40.  Schmitten contends that if Grandpa Bud had planted a crop in 2017, it would not have been able to harvest and process that crop fully by the March 1, 2018 deadline.  *See id*.

Schmitten maintains that Grandpa Bud invested hundreds of thousands of dollars in the Turkey Shoot property to develop it for cannabis production, primarily through the construction of specialized greenhouses unique to cannabis cultivation.  ECF No. 79 at 10.  Schmitten claims that Grandpa Bud was unable to recoup its investment in the Turkey Shoot property within the twenty-four-month amortization period, and he asserts that the property cannot reasonably be put to another profitable agricultural use.  *See id*.  He states, "Having been in agriculture my entire working life, I know how such businesses work, and we simply could not figure out an economical use for the greenhouses."  *Id*.

Grandpa Budd initially filed a Complaint in state court, but Defendants removed the case to this Court.  *See* ECF No. 1.  On June 24, 2019, Grandpa Bud

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

1  filed an amended complaint, alleging the following causes of action: "Estoppel/
2  Detrimental Reliance," "Due Process/ Equal Protection/ Takings/ Delay"
3  (apparently under both the United States Constitution and the Washington
4  Constitution), and "Negligent Misrepresentation."  ECF No. 17 at 7–10.
5       Defendant moved for summary judgment on all of Plaintiff's claims.  ECF
6  No. 64.  In response to Defendant's Motion for Summary Judgment, Grandpa Bud
7  abandoned its estoppel/ detrimental reliance, equal protection, takings, and delay
8  claims.  ECF No. 76 at 20 n.5.  Accordingly, the claims that remain are Plaintiff's
9  federal and state due process claims and its negligent misrepresentation claim.

**LEGAL STANDARD**

11       A court may grant summary judgment where "there is no genuine dispute as
12  to any material fact" of a party's prima facie case, and the moving party is entitled to
13  judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,
14  477 U.S. 317, 322–23 (1986).  A genuine issue of material fact exists if sufficient
15  evidence supports the claimed factual dispute, requiring "a jury or judge to resolve
16  the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac.*
17  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  A key purpose of
18  summary judgment "is to isolate and dispose of factually unsupported claims."
19  *Celotex*, 477 U.S. at 324.
20
21

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 6

1   The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I.  Federal Due Process Claims under 42 U.S.C. § 1983

Grandpa Bud brings its federal due process claims pursuant to 42 U.S.C. § 1983. "Traditionally, the requirements for relief under [§] 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by a

1  federal statute, (2) proximately caused (3) by the conduct of a 'person' (4) acting

2  under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

3  1991).

### A. The Property Interest at Issue

5  Grandpa Bud claims that Defendants violated both his substantive and

6  procedural due process rights under the U.S. Constitution. To succeed on either

7  claim, Grandpa Bud first must show that it was deprived of a constitutionally

8  protected liberty or property interest. *Wedges/ Ledges of Cal. v. City of Phoenix*,

9  24 F.3d 56, 62 (9th Cir. 1994). Generally, property interests are "created and their

10 dimensions are defined by existing rules or understandings that stem from an

11 independent source," such as state law. *Bd. of Regents of State Colls. v. Roth*, 408

12 U.S. 564, 577 (1972). These property interests "include anything to which a

13 plaintiff has a 'legitimate claim of entitlement.'" *Nozzi v. Hous. Auth. of City of*

14 *L.A.*, 806 F.3d 1178, 1191 (quoting *Roth*, 408 U.S. at 576–77). To have a

15 legitimate claim of entitlement to a benefit, a plaintiff "must have more than a

16 unilateral expectation of it." *Id*. at 577. To create an entitlement to a benefit, an

17 independent source, such as state law, must establish and define the contours of

18 that benefit. *Id*.

19 Defendants argue that Grandpa Bud has not identified a valid property

20 interest protected by the due process clause of the U.S. Constitution. They argue

21

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8

that Grandpa Bud does not have an entitlement under Washington law to produce or process cannabis in Chelan County. ECF No. 64 at 5. Additionally, the Court understands Defendants to argue that, even if state law created such an entitlement, no right to produce and process cannabis may be recognized as a valid property interest protected by the U.S. Constitution. *See id*.

While many states have legalized the production, sale, and recreational use of cannabis, these activities remain illegal under federal law. *Gonzales v. Raich*, 545 U.S. 1, 8 (2005). As the Supreme Court has explained, "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Id*. at 14 (citing 21 U.S.C. §§ 823(f), 841(a)(1), and 844(a)). Despite state legalization, there is no federal constitutional right to cultivate cannabis. *See Kent v. Cty. of Yolo*, 411 F. Supp. 3d 1118, 1123 (E.D. Cal. 2019) (citing *Cook v. City of Cal. City*, 2017 WL 1348951, at *4 (E.D. Cal. Apr. 12, 2017)); *see also Raley v. Williams*, No. 2:14-cv-2652-JAM-CMK, 2018 WL 4027020, at *6 (E.D. Cal. Aug. 23, 2018), report and recommendation adopted in part and rejected in part by No. 2:14-cv-02652-JAM-DMC, 2018 WL 6620882 (E.D. Cal. Dec. 18, 2018) ("[T]here cannot be a federal constitutional violation restricting the cultivation of marijuana."). Even when cannabis

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

production is a legitimate use of one's property at the state level, such use is not recognized as a protectable property interest under the U.S. Constitution. *Id.*; *Kent*, 411 F. Supp. 3d at 1123.

Grandpa Bud argues that the right to produce cannabis in Washington is not at issue. Rather, the property interest alleged is Grandpa Bud's property interest in its nonconforming land use, which previously conformed with Chelan County's zoning ordinances. Specifically, Grandpa Bud claims, "Plaintiff's constitutional protected property interest does not stem from its ability to produce and process marijuana . . . . [T]he protected property interest for which Plaintiff seeks redress stems from its previously approved but later non-conforming use." ECF No. 76 at 5 n. 1.

Pursuant to Washington law, a landowner may argue that he has a vested right in a land use that was once legal under local law, but has since become illegal due to a new local regulation, like a zoning ordinance. *McMilian v. King Cty.*, 255 P.3d 739, 745 (Wash. Ct. App. 2011). The Washington State Supreme Court has explained, "An ordinance requiring an immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained." *Id.* (quoting *State ex. Re. Miller v. Cain*, 242 P.2d at 506 (1952) (citation omitted)). However, Washington courts have clarified that nonconforming uses may be ended with a

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

1  "reasonable amortization period," without depriving a landowner of his property
2  interest in the nonconforming use. *Rhod-A-Zalea & 35th, Inc. v. Snohomish Cty.*,
3  959 P.2d 1024, 1029 (Wash. 1998) ("Local governments, of course, can terminate
4  nonconforming uses but they are constitutionally required to provide a reasonable
5  amortization period.").

6  While the Court appreciates Grandpa Bud's argument, the Court finds that
7  Grandpa Bud's alleged property interest in its nonconforming land use cannot
8  easily be distinguished from its production of cannabis. The generalized concept
9  of a nonconforming land use is tangled with the specific nonconforming land use at
10 issue here, the production of a Schedule I drug without federal approval consistent
11 with the Controlled Substances Act. *See Gonzales*, 545 U.S. at 14. The Court
12 finds that the alleged property interest in this case is indistinguishable from
13 federally unauthorized cannabis cultivation, which is not a protectable property
14 interest under the U.S. Constitution.

15 Because Grandpa Bud has failed to show a property interest that is protected
16 by the U.S. Constitution, Grandpa Bud's federal procedural and substantive due
17 process claims fail as a matter of law. Accordingly, Grandpa Bud's Section 1983
18 claim, which is premised on these due process challenges, is dismissed with
19 prejudice.

20
21
ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

### B. Substantive Due Process

Even if Grandpa Bud could demonstrate a valid property interest protected by the U.S. Constitution, which the Court does not find, its substantive due process claim would fail. To challenge a land use regulation under a federal substance due process theory, Grandpa Bud must prove that the regulation "'fails to serve any legitimate governmental objective,' rendering it 'arbitrary or irrational.'" *Star Northwest Inc. v. City of Kenmore*, 308 Fed. Appx. 62 (9th Cir. 2009), amending *Star Northwest Inc. v. City of Kenmore*, 280 Fed. App'x. 654 (9th Cir. 2008), (quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005)) (citing *Shanks v. Dressel,* 540 F.3d 1082, 1088 (9th Cir. 2008)). The Ninth Circuit has explained that the burden on plaintiffs in these cases is "exceedingly high." *Shank*s, 540 F.3d at 1088. A local zoning ordinance will survive a substantive due process challenge so long as it is not "clearly arbitrary and unreasonable, having no relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 394 (1926); *see also Shanks*, 540 F.3d at 1082.

Grandpa Bud disputes the relevant legal test governing its substantive due process claim. It argues that this Court must apply the balancing test outlined by the Washington State Supreme Court in *Northend Cinema, Inc. v. City of Seattle* to assess the constitutionality of the County's new cannabis regulations, specifically, the two-year amortization period. 585 P.2d 1153 (Wash. 1978). However, upon

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

1  review of the case law cited by both parties, the Court finds that the standard test

2  for analyzing alleged substantive due process violations is appropriate here, where

3  Grandpa Bud has challenged a zoning ordinance under a federal substantive due

4  process theory, rather than a First Amendment challenge as in *Northend*. *See Star*

5  *Northwest Inc.*, 308 Fed. App'x. 62 (applying traditional substantive due process

6  analysis to plaintiff's claim that amortization period violated substantive due

7  process, rather than applying the *Northend Cinema* test); *see also Deja Vu-Everett-*

8  *Federal Way, Inc. v. City of Federal Way*, 46 Fed. App'x. 409, 411 (9th Cir. 2002)

9  (finding that the challenged zoning ordinance advanced a legitimate state interest,

10 and thus was not "arbitrary or irrational" for the purposes of substantive due

11 process); *Sylvia Landfield Trust v. City of L.A.*, Case No. CV 09-1798-VBF(RZx),

12 2019 WL 10700866, at *3 (C.D. Cal. May 22, 2009) (quoting *Star Northwest Inc.*,

13 308 Fed. App'x. 62) (explaining that land use regulations violate substantive due

14 process when they fail to serve any legitimate government interest).

15    Applying the *Northend Cinema* balancing test, Grandpa Bud does not argue

16 that the two-year amortization period "'fails to serve any legitimate governmental

17 objective,' rendering it 'arbitrary or irrational.'" *See Star Northwest Inc.*, 308 Fed.

18 Appx. 62 (quoting *Lingle, Inc.*, 544 U.S. at 542). Instead, Plaintiff argues, "There

19 would have been little to no harm to the public if Grandpa Bud had continued its

20 use . . . ." Plaintiff contends that, under the balancing test from *Northend Cinema*,

21

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

"the harm to Grandpa Bud far outweigh[s] any benefit to the public." ECF No. 76 at 12. Thus, Plaintiff does not argue that the County's new cannabis regulations, which provided a two-year amortization period for nonconforming businesses, serve no legitimate government purpose, which is the appropriate inquiry. *See Star Northwest Inc.*, 308 Fed. Appx. 62; *Shanks*, 540 F.3d at 1082.

Moreover, upon review of the record, the Court finds that Plaintiff has not provided evidence to support a claim that Chelan County had no legitimate interest in regulating cannabis production, or in phasing out nonconforming cannabis production over the course of two years.

Therefore, the Court finds that, even if Plaintiff could establish a property interest protected by the U.S. Constitution, Plaintiff's substantive due process claim fails as a matter of law.

### C. Procedural Due Process

Similarly, assuming *arguendo* that a valid property interest exists in this matter, Grandpa Bud cannot show a procedural due process violation. Procedural due process claims have two elements: (1) a deprivation of a protected liberty or property interest, and (2) a "denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "When the action being challenged is purely legislative, [procedural] due process is satisfied if the enacting body provides public notice and open hearings." *Gallo*

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

1  *v. U.S. Dist. Court for the Dist. of Ariz.*, 349 F.3d 1169 (9th Cir. 2003); *see also*

2  *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1261 (9th Cir. 1994).  Here, it is

3  undisputed that the Board of County Commissioners' enactment of the new

4  cannabis regulations was a legislative action.

5     Grandpa Bud makes no argument in its briefing as to how or why

6  Defendants violated its procedural due process rights.  Additionally, the Complaint

7  asserts only the bare allegation that "Chelan County has deprived Grandpa Bud of

8  its interest in its property without due process . . . in violation of the U.S.

9  Constitution . . . ."  ECF No. 17 at 8.  Plaintiff does not provide any evidence

10 demonstrating that the Board of County Commissioners failed to comply with

11 requisite procedures or governing law in enacting the new cannabis regulations.

12 Moreover, the record illustrates that County officials discussed the development of

13 the County's cannabis regulations, including the proposed zoning regulations, in

14 public hearings, and that they accepted public comment on the issue.  *See, e.g.,*

15 ECF No. 66-19 at 3–4: ECF No 66-16; ECF No. 66-29.  Thus, even if Plaintiff had

16 a valid property interest protected by the U.S. Constitution, which the Court does

17 not concede that it does, Defendants appear to have satisfied Plaintiff's due process

18 rights with notice and an opportunity to be heard.  Therefore, Plaintiff's procedural

19 due process claim fails as a matter of law.

20

21

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

**Remaining State Law Claims**

Grandpa Bud's claims under the Washington State Constitution and its claim for negligent misrepresentation under Washington law remain.  A district court may assert supplemental jurisdiction over claims that "form part of the same case or controversy" over which a district court has original jurisdiction.  28 U.S.C. § 1367(a).  However, if a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over the remaining claims.  28 U.S.C. § 1367(c)(3).  If all claims for which a district court has an independent basis for jurisdiction are dismissed before trial, it is common practice to decline to exercise jurisdiction over any remaining state law claims.  *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (Usually, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

The Court had jurisdiction over Plaintiff's federal constitutional claims under federal question jurisdiction.  *See* 28 U.S.C. § 1331.  However, now that the Court has granted summary judgment in favor of Defendants on those federal claims, there is no remaining basis for federal question jurisdiction.  *See* ECF No. 1; ECF No. 17 at 1–2.  Additionally, Plaintiff has not asserted a basis for diversity jurisdiction.  *See id*.  Because the Court dismissed the claims over which it had an independent basis

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

for subject matter jurisdiction, and because it did so early in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Acri*, 114 F.3d at 1001.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 64**, is **GRANTED IN PART**.

2. Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE**.

3. Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

4. Judgment shall be entered for all Defendants on all federal claims.

5. Any remaining, pending motions are **DENIED AS MOOT**, and any hearing dates are **STRICKEN**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this case**.

**DATED** this May 26, 2020.

                  *s/ Rosanna Malouf Peterson*
                ROSANNA MALOUF PETERSON
                  United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17